IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| NICHOLAS WALTERS,<br><br>    Plaintiff,<br><br> v.<br><br>SAFELITE FULFILLMENT, INC., et al.,<br><br>    Defendants. | Civil No. 18-11111(RMB/JS)<br><br>**OPINION** |

APPEARANCES:

SMITH EIBELER, LLC
By: Robert W. Smith, Esq.; Christopher J. Eibeler, Esq.
101 Crawfords Corner Road, Suite 1-105R
Holmdel, New Jersey 07733
  Counsel for Plaintiff Nicholas Walters

PORZIO, BROMBERG & NEWMAN, P.C.
By: Kerri A. Wright, Esq.
100 Southgate Parkaway
P.O. Box 1977
Morristown, New Jersey 07962-1997
  Counsel for Defendant Safelite Fulfillment, Inc.

VORYS, SATER, SEYMOUR, AND PEASE LLP
By: Daniel J. Clark, Esq.
52 E. Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008

By: Liana R. Hollingsworth, Esq.
200 Public Square, Suite 1400
Cleveland, Ohio 44114
  Counsel for Defendant Safelite Fulfillment, Inc.

**RENÉE MARIE BUMB**, United States District Judge:

Plaintiff Nicholas Walters ("Plaintiff") brought this action against Defendant Safelite Fulfillment, Inc. ("Defendant" or "Safelite"), alleging retaliation and associational discrimination/wrongful discharge in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq. ("NJLAD"). Now, this matter comes before this Court upon Defendant's Motion to Dismiss Plaintiff's Complaint in its entirety (the "MTD")[Dkt. No. 15-1], pursuant to Fed. R. Civ. P. 12(b)(6).[1] For the reasons set forth herein, Defendant's Motion to Dismiss will be **GRANTED**.

I. <u>BACKGROUND & PROCEDURAL HISTORY</u>

Plaintiff Nicholas Walters is a resident of Connecticut and was previously employed by Defendant for about twelve years. According to Plaintiff, he began working for Safelite at a location in Cherry Hill, New Jersey in 2005 and remained at that location until March 2015, when he was transferred to a location in Connecticut. [<u>See</u> Compl., at ¶¶ 8-10, 25]. During his employment, Plaintiff states that he was promoted twice, first to Assistant Store Manager in 2011 and then to Store Manager in

---

[1] Alternatively, Defendant asks this Court to consider summary judgment or transfer of this case to the United States District Court for the District of Connecticut. As this Court will dismiss Plaintiff's Complaint for failure to state a claim, the Court does not address these alternative requests.

2

September 2015. [Id., at ¶¶ 9-10, 25]. Approximately two years after being transferred to Connecticut, Plaintiff's employment was terminated in April 2017.

In July 2016, over a year after Plaintiff's transfer to Connecticut, Plaintiff alleges that managers in the Philadelphia region began discriminating against Greg Manning, a technician at the Cherry Hill location, upon Mr. Manning's return to work from a medical leave for ankle surgery. According to Plaintiff, Mr. Manning was subjected to discriminatory conduct, such as ridicule and other mistreatment, based on his disabilities, which included diabetes and obesity. [See Compl., at ¶¶ 30-36]. Mr. Manning was eventually placed on administrative leave on December 2, 2016. [Id. at ¶ 104]. After Plaintiff learned about the situation from Mr. Manning, Plaintiff sent an email to Dale Sweigart, stating that he was "concerned" about the situation with Mr. Manning. [Id.]. In that email, Plaintiff allegedly noted that Plaintiff "had complained of unfair treatment due to his diabetes and weight." On December 7, 2016, Defendant terminated Mr. Manning's employment. [Id. at ¶ 122].

Plaintiff alleges his email regarding Mr. Manning was subsequently forwarded by Philadelphia-area managers to Plaintiff's own Connecticut-based managers, including the local HR representative in Connecticut. [See Compl., at ¶¶ 105-116]. According to Plaintiff, the Philadelphia-area management team

3

shared his email regarding Mr. Manning with Plaintiff's local management for the sole purpose of "further[ing] the Company's plan to retaliate against Plaintiff Walters in his own employment for opposing the unlawful conduct directed at Mr. Manning and for having encouraged Mr. Manning to exercise his rights." [Id. at ¶ 116].

Plaintiff contends that, following his complaint regarding Mr. Manning's treatment, Defendant retaliated against him through "an unwarranted and pretextual discipline warning on February 10, 2017 and putting him on a Personal Development Plan on February 20, 2017." [Compl., at ¶ 149]. Additionally, Plaintiff claims that he was scolded by management for reporting the discriminatory conduct towards Mr. Manning, because Plaintiff "was going to get the Company sued as a result of sending the email." [Id. at ¶¶ 137-143]. On or about April 10, 2017, Plaintiff was terminated from his employment with the Safelite location in Connecticut. [Id. at ¶ 150].

On June 27, 2018, Plaintiff filed his Complaint, alleging that Defendant violated NJLAD (1) by retaliating against Plaintiff for complaining about and objecting to discriminatory conduct towards Mr. Manning; and (2) for terminating Plaintiff for associating with Mr. Manning. In response, Defendant moves to dismiss Plaintiff's NJLAD claims under Fed. R. Civ. P. 12(b)(6).

4

## II. **LEGAL STANDARD**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). When undertaking this review, courts are limited to the

allegations found in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**III. DISCUSSION**

In its Motion to Dismiss, Defendant contends that Plaintiff cannot maintain a cause of action under the NJLAD because Plaintiff was not employed in the state of New Jersey. [See MTD, at 3]. In response, Plaintiff argues that there is "clear legal precedent recognizing that the broad protections provided under the LAD apply to persons who live outside New Jersey who are impacted by discrimination that took place in New Jersey.[2] [See Plaintiff's Response in Opposition to Defendant's MTD ("Pl.'s Resp."), Dkt. No. 18, at 1]. The Court disagrees with Plaintiff's assertion that any such "clear legal precedent" exists.

Contrary to Plaintiff's contention otherwise, "New Jersey courts have consistently applied the law of the state of

---

[2] Plaintiff mischaracterizes Defendant's argument for dismissal as one regarding the impact of a plaintiff's state of residency on the ability to maintain an NJLAD claim. Instead, the question before this Court is the relevance of a plaintiff's state of employment.

employment to claims of workplace discrimination and, therefore, only apply the NJLAD if the claimant was employed in New Jersey." McGovern v. Sw. Airlines, 2013 WL 135128, at *1 (D.N.J. Jan. 8, 2013)(Simandle, C.J.); see also Buccilli v. Timby, Brown & Timby, 283 N.J.Super. 6, 10–11 (App.Div.1995)(a New Jersey resident, employed in Pennsylvania, could not assert a claim under the NJLAD against a law firm even though it had offices in New Jersey); Satz v. Taipina, 2003 WL 22207205, at *18 (D.N.J. Apr. 15, 2003)(Simandle, J.), aff'd, 122 F. App'x 598 (3d Cir.2005)(holding that plaintiff could not assert a claim under the NJLAD where defendants had offices in New Jersey, but plaintiff worked exclusively in Pennsylvania and Delaware); Brunner v. Allied Signal, Inc., 198 F.R.D. 612, 613–14 (D.N.J. Jan. 17, 2001)(Orlofsky, J.)(holding that the NJLAD does not apply to claims brought by a New Jersey resident against a New Jersey company when claimant was employed exclusively in Pennsylvania). The "restriction on the extraterritorial application of the NJLAD is rooted in the well-settled understanding that New Jersey law regulates conduct in New Jersey, not outside the state." Peikin v. Kimmel & Silverman, P.C., 576 F.Supp.2d 654, 657–658 (D.N.J. Aug. 21, 2008)(Simandle, J.).

As alleged, for the entire period, beginning when Plaintiff first complained about the treatment of Mr. Manning through

7

Plaintiff's termination in April 2017, Plaintiff both resided and was employed in the state of Connecticut. In this case, Plaintiff alleges that the discriminatory conduct against Mr. Manning, which occurred at a Cherry Hill, New Jersey location, perpetrated by Philadelphia-area managers, did not begin until July 2016. This was over a year after Plaintiff was transferred to work at a Safelite location in Connecticut.

Although Plaintiff was working in New Jersey when he allegedly protested discriminatory conduct towards Shelby Klein in "late 2014/early 2015," [Compl., at ¶¶ 17-23], Plaintiff never alleges in his Complaint that his defense of Ms. Klein led to any adverse employment action against him. Rather, Plaintiff makes this argument for the first time in response to the motion to dismiss. [Pl.'s Resp., at 18-19]. Indeed, Plaintiff's Complaint specifically notes that Plaintiff received a positive performance evaluation and a promotion, even after complaining about the treatment of Ms. Klein. [See Compl., at ¶¶ 28-29]. Regardless, Plaintiff does not allege that he suffered any adverse employment actions related to that incident until two years later, when he was employed in Connecticut.

In his response brief, Plaintiff incorrectly claims that Trevejo v. Legal Cost Control, Inc., 2018 WL 1569640 (App. Div. Apr. 2, 2018) supports the proposition that out-of-state employees can bring a cause of action under NJLAD. Although the

plaintiff in Travejo resided in Massachusetts and worked from home, she alleged that she "telecommuted" to the office in New Jersey using technology provided by the company. Id. at *2. Even under those circumstances, the court did not conclude that the plaintiff could maintain an NJLAD claim. Rather, the court merely found that further discovery was necessary because it was "unable to determine whether plaintiff is protected under the NJLAD." Id. at *4. In the instant case, Plaintiff, a store manager in Connecticut, does not allege that he had any work responsibilities at all in New Jersey.

The other cases Plaintiff cites to support his position are equally inapplicable.[3] Notably, Craig v. Suburban Cablevision, 274 N.J. Super. 303 (App. Div. 1994), aff'd 140 N.J. 623 (1995), did not address the question of whether the NJLAD applies to out-of-state employees (even though Plaintiff cites Craig for this proposition). Instead, Craig held that plaintiffs, who

---

[3] Other cases cited by Plaintiff do not even involve claims arising under the NJLAD. Although cited to support the argument that out-of-state employees can bring an NJLAD claim, Mehlman v. Mobile Oil Corp., 153 N.J. 163 (1998) involved New Jersey's Conscientious Employee Protection Act ("CEPA"), not the NJLAD. Similarly, D'Agostino v. Johnson & Johnson, Inc., 133 N.J. 516 (1993), "does not involve the NJLAD or its extraterritorial effect" and "does not serve as a persuasive authority" on that issue. See Seibert v. Quest Diagnostics Inc., 2012 WL 1044308, at *7 (D.N.J. Mar. 28, 2012)(Hayden, J.).

9

were employed in New Jersey, had standing to bring associational discrimination claims under the NJLAD.

Finally, Plaintiff argues that he should be allowed to pursue a NJLAD claim because "New Jersey has a strong interest in eradicating the cancer of discrimination in its state." [See Pl.'s Resp., at 19]. However, New Jersey courts have already rejected public policy arguments for applying the NJLAD to out-of-state employees, reasoning that the "law of the state of the employee's workplace applies to claims arising from his employment because the state has an unusually strong interest in applying its own law to employment contracts involving work in [its] state." Diana v. AEX Group, 2011 U.S. Dist. LEXIS 100928, at *7–8 (D.N.J. Sept. 7, 2011)(Sheridan, J.).

Ultimately, Plaintiff's NJLAD claims fail because he was employed outside the state of New Jersey. Even if Plaintiff had plausibly alleged that he was the victim of discriminatory decision-making that occurred within New Jersey, which he does not, that would still probably be insufficient to survive a motion to dismiss. "Whether Plaintiff worked for a New Jersey entity or not, and whether the alleged discriminatory conduct emanated from New Jersey or not, it is clear that Plaintiff performed her duties ... elsewhere, but at no time did she work in New Jersey. In these circumstances, the Plaintiff's connection to New Jersey is insufficient to assert an NJLAD

cause of action." See Albert v. DRS Techs., Inc, 2011 WL 2036965, at *2 (D.N.J. May 23, 2011)(Martini, J.)(dismissing plaintiff's NJLAD claims where she worked for New Jersey corporation and alleged that the discriminatory decision to terminate her was made in New Jersey, but she worked in Florida).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be **GRANTED**. Accordingly, Plaintiff's Complaint will be **DISMISSED**, without prejudice. Although Plaintiff will be granted thirty (30) days leave to amend his Complaint and address the aforementioned deficiencies, this Court is skeptical of Plaintiff's ability to assert a claim under the NJLAD. An Order consistent with this Opinion shall issue on this date.

DATED: March 28, 2019

                                           s/Renée Marie Bumb
                                           RENÉE MARIE BUMB
                                           UNITED STATES DISTRICT JUDGE