[Dkt. No. 35]

```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
                      CAMDEN VICINAGE
```

| | |
|---|---|
| NICHOLAS WALTERS,<br><br>              Plaintiff,<br><br>    v.<br><br>SAFELITE FULFILLMENT, INC., et al.,<br><br>              Defendants. | Civil No. 18-11111(RMB/JS)<br><br>**OPINION** |

APPEARANCES:

SMITH EIBELER, LLC
By: Robert W. Smith, Esq.; Christopher J. Eibeler, Esq.
101 Crawfords Corner Road, Suite 1-105R
Holmdel, New Jersey 07733
        Counsel for Plaintiff Nicholas Walters

PORZIO, BROMBERG & NEWMAN, P.C.
By: Kerri A. Wright, Esq.
100 Southgate Parkaway
P.O. Box 1997
Morristown, New Jersey 07962-1997

VORYS, SATER, SEYMOUR AND PEASE LLP
By: Daniel J. Clark, Esq.
52 E. Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008

By: Liana R. Hollingsworth, Esq.
200 Public Square, Suite 1400
Cleveland, Ohio 44114
        Counsel for Defendant Safelite Fulfillment, Inc.

**RENÉE MARIE BUMB**, United States District Judge:

Plaintiff Nicholas Walters ("Plaintiff") brings this action against Defendant Safelite Fulfillment, Inc. ("Defendant" or "Safelite"), alleging retaliation and associational discrimination/wrongful discharge in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("NJLAD") and retaliation in violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA"). This Court previously issued an Opinion and Order [Dkt. Nos. 28, 29] dismissing Plaintiff's initial complaint, without prejudice, but permitted Plaintiff to file an Amended Complaint, which he did on April 23, 2019 [Dkt. No. 30]. Now, this matter comes before this Court upon Defendant's Motion to Dismiss Plaintiff's First Amended Complaint in its entirety, or alternatively, for Summary Judgment or a Change of Venue (the "Second MTD")[Dkt. No. 35].[1] At this stage of the litigation, without substantive discovery and clear disputes of material fact, the Court declines to convert the Second MTD into a motion for summary judgment. For the reasons set forth herein, Defendant's Second MTD will be **DENIED.**

---

[1] As Plaintiff's causes of action are all brought under New Jersey state statutes, and Plaintiff's case is related to another cases pending in the District of New Jersey, Greg Manning v. Safelite Fulfillment, Inc., et al., Civ. No. 17-2824 (RMB/JS), this Court finds that transfer of venue would be improper at this juncture.

2

## I. FACTUAL BACKGROUND

Plaintiff Nicholas Walters is a resident of Connecticut and was employed by Safelite for about twelve years, until his termination in 2017. Plaintiff worked for Safelite at a location in Cherry Hill, New Jersey from 2005 until March 2015, when he was transferred to a location in Connecticut. See Am. Compl., at ¶¶ 8-10, 27-28. During his employment, Plaintiff states that he was promoted twice, first to Assistant Store Manager in 2011 and then to Store Manager in September 2015. Id., at ¶¶ 9-10, 25. In April 2017, approximately two years after his transfer to Connecticut, Plaintiff's employment was terminated.

In the Amended Complaint, Plaintiff alleges that he requested the transfer to Connecticut because of his moral objections to local management's efforts to discriminate against a female employee on pregnancy/maternity leave. According to Plaintiff, in late 2014 or early 2015, Kennan McCafferty (District Manager) and Sam Lok (Operations Manager) approached Plaintiff and offered him a promotion to replace Shelby Klein as Store Manager of the Absecon, New Jersey location. See Am. Compl., at ¶ 17-18. Mr. McCafferty and Mr. Lok allegedly told Plaintiff that Ms. Klein would be terminated upon her return from pregnancy leave, but that they would be waiting to fire her

3

until she returned to work, "so it would not seem as if she was being fired for taking maternity leave." Id. Plaintiff claims that he told management that what they were doing as "unethical" and that he would not accept the promotion under those circumstances. Id. at 19. Instead, Plaintiff states that he requested the transfer to Connecticut "so that he could get out of the Philadelphia region, and away from its management team and the Regional Business Partner Greg Byrd.". Id. at ¶ 24.

In July 2016, over a year after transferring to Connecticut, Plaintiff alleges that he learned that managers in the Philadelphia region had been discriminating against Greg Manning, a technician at the Cherry Hill location. According to Plaintiff, Mr. Manning, who had recently returned to work from a medical leave for ankle surgery, was being ridiculed and mistreated by management based on his disabilities, which included diabetes and obesity. See Am. Compl., at ¶¶ 35-41. In Plaintiff's opinion, Mr. Manning's disabilities were a motivating factor in management's decision to place Mr. Manning on administrative leave on December 2, 2016. Id. at ¶¶ 110-112.

After Mr. Manning informed Plaintiff about the discriminatory conduct he was facing at work, Plaintiff sent an email to Dale Sweigart (East Region Quality and Training Manager), stating that Plaintiff was "very concerned" about the situation with Mr. Manning. Am. Compl., at ¶ 112. In that email,

4

Plaintiff noted that Mr. Manning "had complained of unfair treatment due to his diabetes and weight." Plaintiff asked Mr. Sweigart to investigate the issue. Mr. Sweigart responded that he was "aware of the situation in Philly," and that he "would let Philadelphia and Greg Byrd deal with the situation." Id. at ¶ 117. Safelite ultimately terminated Mr. Manning's employment on December 7, 2016. Id. at ¶ 163.

Plaintiff alleges that his email regarding Mr. Manning was subsequently forwarded to Philadelphia-area managers and to Plaintiff's own Connecticut-based managers, including the local HR representative in Connecticut. See Am. Compl., at ¶¶ 133-139. According to Plaintiff, the Philadelphia-area management team "had no legitimate non-discriminatory business reason to forward Plaintiff Walters's email" to Plaintiff's manager in Connecticut. Id. at ¶ 134. Plaintiff alleges that his email was shared with his Connecticut managers "to further the Company's plan to retaliate against Plaintiff Walters in his own employment for complaining about and opposing the unlawful conduct directed at Mr. Manning and for encouraging Mr. Manning to exercise his rights under the law." Id. at ¶ 135. Plaintiff also alleges that "[i]f it were not for Plaintiff's prior complaints about Shelby Klein, Defendant [] would not have implemented the plan of retaliation that resulted in his termination." Id. at ¶ 136

Following his complaint about Mr. Manning's treatment, Plaintiff alleges that Defendant retaliated against him through "an unwarranted and pretextual discipline warning on February 10, 2017 and putting him on a Personal Development Plan ("PDP") on February 20, 2017." See Am. Compl., at ¶ 191. Additionally, Plaintiff claims that he was scolded by management for reporting the discriminatory conduct towards Mr. Manning, because Plaintiff "was going to get the Company sued as a result of sending the email." Id. at ¶¶ 183-185. On April 10, 2017, Plaintiff was terminated from his employment with the Safelite. Id. at ¶ 198.

On June 27, 2018, Plaintiff filed his initial Complaint [Dkt. No. 1], alleging that Defendant violated NJLAD (1) by retaliating against Plaintiff for complaining about and objecting to discriminatory conduct towards Mr. Manning; and (2) for terminating Plaintiff for associating with Mr. Manning. On March 28, 2019, this Court dismissed Plaintiff's initial Complaint, without prejudice, finding that Plaintiff had failed to sufficiently allege facts to support standing under NJLAD. Subsequently, Plaintiff filed an Amended Complaint on April 23, 2019 [Dkt. No. 30], in which he alleged additional facts related to his NJLAD claims and added a CEPA retaliation claim. Now, Defendant moves to dismiss Plaintiff's Amended Complaint, or in

the alternative for summary judgment or a transfer of venue to U.S. District Court for the District of Connecticut.

II. **LEGAL STANDARD**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the

plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012).  When undertaking this review, courts are limited to the allegations found in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

### III. **DISCUSSION**

In the Second Motion to Dismiss, Defendant contends that: (1) Plaintiff's CEPA claim is untimely; (2) Plaintiff waived his NJLAD claims by asserting a CEPA claim; and (3) Plaintiff cannot maintain a cause of action under either CEPA or NJLAD because Plaintiff was not employed in New Jersey. See Second MTD, at 3-10.  In his opposition brief, Plaintiff argues that his CEPA claim is timely, as it relates back to earlier pleadings, and that the CEPA claim should not bar his NJLAD claims before he has had the opportunity to conduct discovery.  Upon review, this Court finds that dismissal is not warranted at this stage of the litigation.

#### A. *CEPA's Statute of Limitations*

First, Defendants argue that Plaintiff's CEPA claim, which was first asserted in the Amended Complaint on April 23, 2019,

8

is barred by CEPA's one-year statute of limitations. As articulated by the Supreme Court of New Jersey, "the CEPA one-year statute of limitations, N.J.S.A. 34:19-5, begins to run from the final act of retaliation when there is a continued course of retaliatory conduct by the employer." Green v. Jersey City Bd. of Educ., 177 N.J. 434, 437–38 (2003). In this case, the final "retaliatory action" against Plaintiff was presumably his discharge on April 10, 2017, meaning that Plaintiff would have needed to assert his CEPA claim no later than April 10, 2018.

Under New Jersey's relation back doctrine, "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." See Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 498–99 (2006). Generally, "the rule should be liberally construed" and "[w]hen a period of limitation has expired, it is only a distinctly new or different claim or defense that is barred." Id. (quoting Harr v. Allstate Ins. Co., 54 N.J. 287, 299–300 (1969)).

Plaintiff argues that the CEPA claim is timely because it relates back to Greg Manning's Motion to Amend the Complaint to add Plaintiff Walters as a plaintiff in the related civil action, Greg Manning v. Safelite Fulfillment, Inc., et al., Civ.

9

No. 17-2824 (RMB/JS), at Dkt. No. 22-2, filed on March 22, 2018 (the "Manning Motion").[2]  In that motion, Mr. Manning's counsel, who had also been retained by Plaintiff Walters, argued that Plaintiff Walters should be added to the Manning action due to shared issues of law and fact.  Discussing Plaintiff Walters' potential claims, counsel noted that "Mr. Walters also made a prior protected complaint directly to Safelite while working in New Jersey concerning another employee in response to being told that they were going to terminate her because of her pregnancy and complained directly to Mr. Byrd in response to his threatening conduct when they met to discuss his protected complaints." See Manning Motion, at 17.

The statements in the Manning Motion clearly refer to Plaintiff's alleged complaints about discrimination against Ms. Klein.  As such Defendant was on notice, as early as March 22, 2018, that Plaintiff believed that these complaints, along with his complaints about discrimination against Mr. Manning, factored into his own termination.  The Court finds that the

---

[2] Plaintiff also contends that his CEPA claim should benefit from equitable tolling because he was initially unaware of the extent to which his prior complaint about discrimination against Ms. Klein had impacted his own termination. See Pl.'s Opp. Br. at 21.  As the Court finds that Plaintiff's CEPA relates back to the Manning Motion, and this "discovery rule" assertion is absent from Plaintiff's Amended Complaint, the Court need not (and cannot) address whether Plaintiff would have benefited from equitable tolling.

10

CEPA claim relates back to the Manning Motion and is, therefore, timely.[3]

**B. *CEPA's Waiver Provision***

Next, Defendant argues that Plaintiff's assertion of a CEPA claim effectively waives Plaintiff's NJLAD claims. The Supreme Court of New Jersey has held that once a CEPA claim is instituted "any rights or claims for retaliatory discharge based on a contract of employment; collective bargaining agreement; State law, whether its origin is the Legislature, the courts, the common law or rules of court; or regulations or decisions based on statutory authority, are all waived." Young v. Schering Corp., 141 N.J. 16, 29 (1995).

Plaintiff's NJLAD claims, as alleged, are clearly predicated upon the same facts as Plaintiff's CEPA claim. However, courts in this district have generally held that "the CEPA waiver does not attach until after the completion of discovery." Broad v. Home Depot U.S.A., Inc., 16 F. Supp. 3d 413, 417 (D.N.J. 2014); see also Rossi v. Vericare Mgmt., Inc., 2016 WL 6892075, at *4 (D.N.J. Nov. 22, 2016)("Plaintiff should have the opportunity to conduct discovery regarding his claims before he is required to make an election of remedies between

---

[3] The Court also notes that Plaintiff Walters should not be prejudiced simply because this Court denied the motion for him to be added as a plaintiff in the Manning action.

11

his CEPA and LAD claims under the waiver provision"); Chadwick v. St. James Smokehouse, Inc., 2015 WL 1399121 (D.N.J. Mar. 26, 2015)("A decision about CEPA waiver ought to be reached after discovery"); Rubin v. Sultan Healthcare, Inc., 2009 WL 1372272 (D.N.J. May 15, 2009)(concluding that "the CEPA waiver provision would not require a plaintiff to elect her remedy at the pleading stage of the litigation but rather defer the waiver until the plaintiff has had an opportunity to conduct discovery").[4] Therefore, this Court declines to enforce the CEPA waiver against Plaintiff at the pleading stage of the litigation. However, Defendant may raise this issue again after discovery.

## C. *Viability of Plaintiff's CEPA and NJLAD Claims*

Finally, Defendant argues that Plaintiff cannot maintain causes of action under CEPA and NJLAD because he was not a "New

---

[4] This Court is unpersuaded by the contradictory decisions in this district, which have held that the CEPA waiver is effective at the pleading stage. See Hornung v. Weyerhaeuser Co., Inc., 2007 WL 2769646, at *6 (D.N.J. Sept. 21, 2007)(holding that, based on the provision's use of the phrase "institution of the action," a plaintiff "waive[s] all other CEPA-related claims upon his filing of a claim under CEPA"); Hilburn v. Bayonne Parking Auth., 2009 WL 777147, at *3 (D.N.J. Mar. 20, 2009)(concluding that, "because the clear and unambiguous language of CEPA supports the interpretation that an action is 'instituted' upon filing, and because New Jersey courts have provided no authority to the contrary, the Court finds that Plaintiffs waived their CEPA-related claims upon filing their CEPA claim").

12

Jersey Employee."  Indeed, "New Jersey courts have consistently applied the law of the state of employment to claims of workplace discrimination and therefore, only apply the NJLAD if the claimant was employed in New Jersey." Peikin v. Kimmel & Silverman, P.C., 576 F.Supp.2d 654, 657 (D.N.J. 2008)(quoting Weinberg v. Interep Corp., 2006 WL 1096908, at *6 (D.N.J. Apr. 26, 2006)). "Similarly, CEPA is generally only available to New Jersey employees, as 'New Jersey law regulates conduct in New Jersey.'" Papalini v. Sensient Colors, Inc., 2012 WL 1345353, at *4 (D.N.J. Apr. 18, 2012)(citing D'Agostino v. Johnson & Johnson, Inc., 133 N.J. 516 (1993)).

Previously, this Court dismissed Plaintiff's NJLAD claims, noting that Plaintiff both resided in and was employed in Connecticut for the entire period during which Mr. Manning was allegedly discriminated against in New Jersey.  However, this case is now complicated by Plaintiff's new allegation that his termination was, at least partially, in retaliation for his objections to the treatment of Ms. Klein, which were voiced while he was employed in New Jersey.

This Court finds no analogous precedent for a case such as this, in which a plaintiff moved to work for the same employer in a different state, and later claimed that they were retaliated against in the second state for underlying discriminatory activities that occurred in the first state.

13

However, other courts in this district have recognized the possibility that "CEPA remedies may be available to an out-of-state employee in limited circumstances, such as where the defendants caused wrongdoing in New Jersey or made or influenced the decision to terminate the plaintiff in New Jersey." Papalini, 2012 WL 1345353, at *4 (citing Norris v. Harte-Hanks, Inc., 122 Fed. Appx. 566, 569 (3d Cir. 2004)).  Furthermore, the Superior Court of New Jersey, Appellate Division, recently recognized that out-of-state employees may be able to assert a NJLAD claim where the discriminatory conduct took place in New Jersey. See Calabotta v. Phibro Animal Health Corp., 460 N.J. Super. 38, 67 (App. Div. 2019).

Given the Supreme Court of New Jersey's guidance that the New Jersey's anti-discrimination statutes should be "liberally construed" to advance their beneficial purposes, see Smith v. Millville Rescue Squad, 225 N.J. 373, 390 (2016), the Court finds that Plaintiff's Amended Complaint alleges sufficient contacts to the state of New Jersey for his NJLAD and CEPA claims survive a motion to dismiss.  However, the Court will not preclude Defendant from raising this issue again at summary judgment after discovery has clarified the relationship, if any, between Plaintiff's termination and conduct occurring in the state of New Jersey.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Second Motion to Dismiss will be **DENIED**, but without prejudice to Defendant's ability to raise these issues again after discovery, on a motion for summary judgment. An Order consistent with this Opinion shall issue on this date.

DATED: December 31, 2019

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
UNITED STATES DISTRICT JUDGE