IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

NICHOLAS WALTERS,

             Plaintiff,

    v.

SAFELITE FULFILLMENT, INC., et al.,

             Defendants.

Civil No. 18-11111(RMB/MJS)

**OPINION**

APPEARANCES:

SMITH EIBELER, LLC
By: Robert W. Smith, Esq.; Christopher J. Eibeler, Esq.
101 Crawfords Corner Road, Suite 1-105R
Holmdel, New Jersey 07733
        Counsel for Plaintiff

PORZIO, BROMBERG & NEWMAN, P.C.
By: Kerri A. Wright, Esq.
100 Southgate Parkway
P.O. Box 1977
Morristown, New Jersey 07962-1997
        Counsel for Defendant

**RENÉE MARIE BUMB,** United States District Judge:

    This matter comes before the Court upon Defendant Safelite

Fulfillment, Inc.'s ("Defendant" or "Safelite") Motion for

Summary Judgment. [Docket No. 60]. Plaintiff Nicholas Walters

("Plaintiff" or "Walters") brought this action against Defendant

alleging retaliation and associational discrimination/wrongful

discharge in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq. ("NJLAD"). For the reasons set forth herein, Defendant's Motion for Summary Judgment will be **GRANTED.**

I.    <u>BACKGROUND & PROCEDURAL HISTORY</u>

Plaintiff was a Safelite employee from May 2005 until April 2017. [Docket No. 66-1, at ¶¶ 3, 138]. He began his Safelite career in Connecticut, before transferring to Cherry Hill, NJ and later, West Chester, PA. [<u>Id.</u> at ¶¶ 4-6]. During his time in West Chester, Walters also assisted at the Absecon, NJ location, while its manager was on maternity leave. [<u>Id.</u> at ¶ 7]. In March 2015, Plaintiff transferred to the Hartford, CT market, where he worked until his termination. [<u>Id.</u> at ¶ 9].

According to the Amended Complaint [Docket No. 30], Plaintiff alleges that he was terminated in violation of the NJLAD. Specifically, he argues that he raised objections to Defendant's termination and suspension of two Safelite employees and he was terminated for raising those objections. [<u>See</u> <u>id.</u>].

This dispute largely begins while Plaintiff was working in West Chester, PA and assisting at the Absecon, NJ location. Walters contends that, in 2014, he was approached by Safelite Operation Manager Sambath Lok who offered him the Absecon Store Manager position. [Docket No. 66-1, at ¶ 7]. Plaintiff asked about the current store manager, Shelby Klein, who was on

maternity leave. According to Plaintiff, Lok responded that
Safelite would terminate Klein's employment and that he "didn't
think women should be managers, because if they get pregnant,
they can take long times off of work and get paid for it."
[Docket No. 63]. Shortly thereafter, Plaintiff claims that he
met with Lok and two other Safelite managers, who reiterated the
desire to fire Klein and replace her with Plaintiff. [Id.]. At
this meeting, Plaintiff allegedly objected to firing Klein,
refused the promotion, and requested a transfer. [Docket No. 66-
1, at ¶ 26]. Defendant approved Plaintiff's transfer request,
which was finalized in March 2015. [Docket No. 6-1, at ¶ 9].

In addition, Walters argues that he was targeted for his
objection to the suspension and termination of Greg Manning.
[See Docket No. 30]. Manning was an employee in Cherry Hill, NJ,
who worked with Plaintiff before Plaintiff's 2015 transfer. [See
generally, id. at ¶¶ 64-67]. In August 2016, Manning purportedly
spoke with Plaintiff (now in Connecticut) about his store
manager harassing and discriminating against him due to his
obesity and diabetes. [Id. at ¶ 64]. According to Manning, his
attempts to report this harassment were unsuccessful, and, on
December 2, 2016, he was placed on administrative leave for
violating company policy. [Id. at ¶ 66].

Plaintiff alleges that, upon speaking with Manning, he
elected to investigate the harassment himself. [Id. at ¶ 67]

3

Eventually, Plaintiff concluded that Manning had done nothing wrong and reported these findings to management. [Id. at ¶ 69]. Nevertheless, Defendant terminated Manning's employment five days after placing him on leave. [Id. at ¶¶ 90-91]. Walters continued to work for Defendant for about 4 months after Manning's termination. [Id. at ¶ 137]. But Plaintiff alleges that his termination in April 2017 resulted, in part, from his objections to Manning's treatment.

Defendant disputes Plaintiff's allegations and claims that it terminated his employment due to poor performance. In September 2015, shortly after his transfer from West Chester, Defendant promoted Plaintiff from the Assistant Store Manager to the Store Manager of the West Hartford, CT store. According to Defendant, the West Hartford store began to experience several performance deficiencies under Walters's leadership, which continued until his termination. [Docket No. 60-1, at ¶ 55]. Specifically, Defendant observed that the West Hartford store scored poorly in customer satisfaction and overtime productivity, compared to other Connecticut locations. [Id. at ¶¶ 56-57]. Defendant also contends that Plaintiff's manager had to assist Plaintiff in improving his communications and ability to speak to others respectfully. [Id. at ¶ 61]. Plaintiff's management issues allegedly continued into 2017, and the West

Hartford, CT store was consistently the worst performing store in the market. [Id. at ¶¶ 93-101].

During early 2017, Defendant hired John Turcotte, who would become Plaintiff's new direct supervisor. [Docket No. 66-1, at ¶ 102]. Shortly thereafter, Turcotte issued Plaintiff a "Performance Improvement Plan" and a "Personal Development Plan" allegedly due to both the West Hartford store's poor performance and "Plaintiff's inappropriate conduct." [Id. at ¶¶ 109, 115]. Neither of these events affected Plaintiff's role or pay. [Id. at ¶ 116]. In February 2017, Turcotte requested an outline from Plaintiff on steps he would take to improve. [Id. at ¶ 120]. Turcotte was allegedly unsatisfied with Plaintiff's plans, and continued to coach him on potential improvements. [Docket No. 60-1, at ¶¶ 122-123].

Defendant contends that Plaintiff's personal and store performance continued to drop in March 2017, and it then began the process of terminating his employment. [Id. at ¶¶ 124-28, 134]. Plaintiff was officially terminated on April 10, 2017. [Docket No. 66-1, at ¶ 137].

## II.  <u>LEGAL STANDARD</u>

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might impact the

"outcome of the suit under the governing law." <u>Gonzalez v. Sec'y
of Dept of Homeland Sec.</u>, 678 F.3d 254, 261 (3d Cir. 2012). A
dispute is "genuine" if the evidence would allow a reasonable
jury to find for the nonmoving party. <u>Id.</u>

In determining the existence of a genuine dispute of
material fact, a court's role is not to weigh the evidence; all
reasonable inferences and doubts should be resolved in favor of
the nonmoving party. <u>Melrose, Inc. v. City of Pittsburgh</u>, 613
F.3d 380, 387 (3d Cir. 2010). However, a mere "scintilla of
evidence," without more, will not give rise to a genuine dispute
for trial. <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir.
2001). Moreover, a court need not adopt the version of facts
asserted by the nonmoving party if those facts are "utterly
discredited by the record [so] that no reasonable jury" could
believe them. <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). In the
face of such evidence, summary judgment is still appropriate
"where the record taken as a whole could not lead a rational
trier of fact to find for the nonmoving party." <u>Walsh v. Krantz</u>,
386 F. App'x 334, 338 (3d Cir. 2010).

The movant has the initial burden of showing through the
pleadings, depositions, answers to interrogatories, admissions
on file, and any affidavits "that the non-movant has failed to
establish one or more essential elements of its case."
<u>Connection Training Servs. v. City of Phila.</u>, 358 F. App'x 315,

6

318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." Id. In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord. Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC. v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment."). However, "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial"; the evidence does not need to be in admissible form at the time of summary judgment. FOP v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016).

## III. **DISCUSSION**

In its Motion for Summary Judgment, Defendant contends that Plaintiff cannot maintain a cause of action under the NJLAD because Plaintiff was not employed in the state of New Jersey at the time of his adverse employment action, Plaintiff was not a resident of New Jersey at that time, and all of the operative events occurred outside of New Jersey. In response, Plaintiff argues that the NJLAD is implicated because his termination

resulted, in part, from objections he made to Defendant's termination of Klein from Defendant's Absecon, NJ location, which he made while living and working in New Jersey. Plaintiff also contends that the NJLAD applies to his claims because the NJLAD is not limited to residents of New Jersey, and the facts of this case warrant application of the NJLAD to the out-of-state events-- particularly since he objected to Manning's termination, who was a New Jersey employee and resident.

As a preliminary matter, however, the Court must begin by addressing two issues: Plaintiff's untimely statements of fact, and Plaintiff's NJLAD associational discrimination/wrongful discharge claim.

First, Plaintiff failed to timely file a statement of undisputed material facts and a response to Defendant's statement of undisputed material facts. Plaintiff explains that these documents were inadvertently excluded from the brief in opposition, and that counsel did not realize they were missing until Defendant filed its reply brief. [Docket No. 66]. Nevertheless, it still took Plaintiff several working days to address the missing documents after Defendant's reply brief was docketed. By failing to file these documents, the Court could deem all of the facts in the unanswered statement admitted. See Local Civ. R. 56.1(a) ("any material fact not disputed shall be deemed undisputed for purposes of the summary judgment

motion."). But the Court will not take such action here, because the late filings do not prejudice Defendant. Instead, the Court will fully consider Plaintiff's documents as though timely filed.

In the future, counsel should ensure that all exhibits are attached to their filings and respond promptly to errors or omissions.

Second, Plaintiff did not address his NJLAD associational discrimination/wrongful discharge claims in his summary judgment briefing. There are two claims at issue in this case: NJLAD retaliation and NJLAD associational discrimination/wrongful discharge. Defendant moved for summary judgment on both counts, but Plaintiff addressed only NJLAD retaliation. Indeed, nearly one-third of Defendant's brief argues why summary judgment is appropriate on Plaintiff's associational discrimination claim, yet Plaintiff did not address this claim. When a party's "opposition brief contains no legal or factual argument opposing summary judgment on [certain] counts," the Court may deem "these claims abandoned." Simon v. Shore Cab, LLC, No. 13-6290 (FLW)(LHG), 2016 WL 1059267, at *8 (D.N.J. Mar. 17, 2016); see also Damiano v. Sony Music Ent., Inc., 975 F. Supp. 623, 637 (D.N.J. 1996) ("Claims in litigation are not fungible items to be abandoned and revived at will, rendering plaintiff's theories a moving target. These claims will not now be considered when

plaintiff had every opportunity to make these arguments in response to defendants' motion for summary judgment but chose not to."). Thus, Plaintiff's associational discrimination/ wrongful discharge claims are abandoned, and the Court will now consider only Plaintiff's retaliation claims.

Under the NJLAD, retaliation requires a Plaintiff to show (1) that he engaged in a protected activity known to his employer, (2) that he was subjected to an adverse employment decision, and (3) a causal connection between his protected activity and the adverse employment action. Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013). In addition, a plaintiff cannot recover on a retaliation claim, unless he also shows "that the original complaint was both reasonable and made in good faith." Id.

Plaintiff is not required to prove that he is a member of a protected class, see Cottrell v. Rowan Univ., 786 F. Supp. 2d 851, 858 (D.N.J. 2011), but he must allege actual discrimination. Dunkley v. S. Coraluzzo Petroleum Transporters, 437 N.J. Super. 366, 377(App. Div. 2014). Stated differently, a "general complaint of unfair treatment" is insufficient. Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir.1995).

Here, the parties largely contest the causal connection factor. A Plaintiff can establish a causal connection in numerous ways. Circumstantial evidence, often in the form of

temporal proximity or a "pattern of antagonism," is sufficient to establish a causal connection. Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997). But these arguments are not exclusive, and the Court must instead look at the whole body of evidence to infer a causal link. Id.

Plaintiff identifies two protected actions that he argues led to his termination: his objections to the termination and mistreatment of Shelby Klein and Greg Manning, respectively. The Court will now consider each in turn.

A. Plaintiff's objections to Klein's termination

Plaintiff began assisting at the Absecon, NJ location in 2014, because that store's manager, Shelby Klein, took maternity leave. [[Docket No. 66-1, at ¶¶ 6-7]. Plaintiff alleges that, prior to his March 2015 transfer to Connecticut, he was offered Klein's position in Absecon, because Defendant intended to fire Klein for taking maternity leave. Plaintiff claims that he objected to this termination, which later led to his own termination.

As discussed more thoroughly below, the relationship between Plaintiff and the state of New Jersey, for NJLAD purposes, in tenuous. Before Plaintiff amended his complaint to include allegations that his termination resulted, in part, from his objections to Klein's termination, the Court dismissed the Complaint. [See Docket Nos. 28 and 29]. The Court only permitted

Plaintiff's claims to move forward after he alleged that he engaged in protected activity while living and working in New Jersey. [See Docket Nos. 42 and 43]. But these additional allegations do not guarantee that Plaintiff's claims survive summary judgment.

Plaintiff attempts to establish a causal connection between his objections and his subsequent termination in two ways. First, he argues that a causal connection can be established by temporal proximity. This is correct, but it is undisputed that Plaintiff was not terminated, and faced no other adverse employment action, for more than two years after raising his objections to Klein's termination. Recognizing this, Plaintiff argues that "employers, are aware of temporal proximity as a factor in the consideration of causation," so they "lay in wait until sufficient time has passed or until such a time has come that the employer is able to formulate a reason for termination." [Docket No. 63]. In other words, Plaintiff's argument is that the proof of temporal proximity is, paradoxically, the absence of temporal proximity. This is insufficient.

Second, he concludes that he suffered a pattern of antagonism from Defendant. Although the Court does not weigh the evidence, it must determine whether the record could lead a rational trier of fact to find for the non-moving party. See

Walsh, 386 F. App'x at 338. Here, Plaintiff identifies no evidence establishing antagonism resulting from his complaints about Klein's termination. The record shows that Plaintiff's post-objection transfer request was granted [Docket No. 66-1, at ¶ 9], he received positive performance evaluations in April 2015 and January 2016 [Id. at ¶¶ 43 and 47], and he was promoted to the Store Manager of the West Hartford Store in September 2015 [Id. at ¶ 45]. Moreover, Plaintiff has not provided any description of antagonism that he suffered. In contrast, he acknowledges that Defendant took no purported retaliation for years. [See Docket No. 63, at 8] ("Plaintiff did not suffer a discrete act of retaliation until in or about late 2016, early 2017, when Safelite made the decision to terminate his employment."). Thus, Plaintiff has provided no evidence of a pattern of antagonism that could allow a rational trier of fact to find that Defendant retaliated against Plaintiff for his objection to Klein's termination.

B. Plaintiff's objections to Manning's treatment

Unlike Plaintiff's claims regarding his objections to Klein's termination, his objections to Manning's suspension and termination have nearly no connection to the state of New Jersey. Both Plaintiff's purported protected activity and his adverse employment action occurred while he was living and working in Connecticut. Evidently, the only connection with New

13

Jersey is the fact that Manning was employed in Defendant's Cherry Hill, NJ location at the time he was suspended and terminated. Nevertheless, Plaintiff argues that NJLAD Retaliation is an appropriate cause of action. In response, Defendant argues that the NJLAD is inapplicable and Plaintiff should have asserted a claim under a similar Connecticut law.

This Court applies New Jersey's choice-of-law rules. Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC, 450 N.J. Super. 1, 36 (App. Div. 2017) ("[W]hen New Jersey is the forum state, its choice-of-law rules control."). In Calabotta v. Phibro Animal Health Corp., 460 N.J. Super. 38 (App. Div. 2019), the New Jersey Superior Court established that an out-of-state Plaintiff may be able to assert an NJLAD claim in some, limited circumstances. The Court must first "determine whether an actual conflict of laws exists" by examining "the substance of the potentially applicable laws to determine whether there is a distinction between them." Id. at 54 (internal quotation marks omitted). A conflict occurs when "when the application of one or another state's law may alter the outcome of the case." In re Accutane Litig., 235 N.J. 229, 254 (2018). An actual conflict exists when, for example, the claims have different statutes of limitation, and one has lapsed. See McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 584 (2017). ("When a complaint is timely filed within one state's statute of limitations but is

filed outside another state's, then a true conflict [of laws] is present.") If no conflict is present, the Court applies the law of the forum. Id.

If New Jersey law conflicts with the out of state law, the Court must "apply the choice-of-law principles described in the Second Restatement [of Conflicts of Laws], particularly sections 6, 145, and 146." Calabotta, 460 N.J. Super. at 54-55. Ordinarily, this analysis begins by determining whether New Jersey Legislature has intended the relevant law to apply to any case where a New Jersey court has jurisdiction. Fairfax, 450 N.J. Super. at 43. In the NJLAD context, however, New Jersey Courts have already held that there is no discernable legislative intent, and that Courts should determine whether New Jersey has "the most significant relationship" with the dispute. Calabotta, 460 N.J. Super. at 55.

The state with the most significant relationship is presumed to be the state where the injury occurred. Id. at 56. But this presumption can be overcome. Sections 6 and 145 of the Restatement (Second) of Conflicts of Laws each provide a list of factors for Courts to consider.

Section 6 identifies seven, non-exclusive factors that courts must address when deciding which state's law applies:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Second Restatement § 6(2). In turn, Section 145 provides four additional consideration:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

Second Restatement § 145(2).

In considering the § 145 factors, the Court does not apply a strictly quantitative analysis. Instead, it must assess the factors "in terms of the guiding touchstones of the [Section 6 factors]." Fairfax, 450 N.J. Super. at 51. Moreover, "the contacts are to be evaluated according to their relative importance with respect to the particular issue." Id. (internal quotation marks omitted).

Here, the two relevant state laws are the NJLAD and the Connecticut Human Rights and Opportunity Act ("CHROA"). The NJLAD states that:

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination . . . For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

N.J.S.A. 10:5-12(d). In contrast, the CHROA provides:

It shall be a discriminatory practice in violation of this section . . . For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84.

CHROA § 46a-60(b)(4).

Despite the apparent similarities between the two statutes, the Court finds that an actual conflict exists. Unlike the NJLAD, the CHROA includes a unique administrative exhaustion requirement. Specifically, CHROA requires the party who alleges discrimination to first file a claim with a state commission before bringing an action in Court. § 46a-82. The Complainant only has 180 days "after the alleged act of discrimination" to file this complaint. Id. Moreover, § 46a-102 also establishes that the statute of limitations for a discriminatory employment

17

action is two years from the date they filed a complaint with the commission. Although the NJLAD has a two-year statute of limitations as well, the triggering event is very different.

In effect, this means that when Plaintiff filed this case on June 27, 2018, he was unable to file a claim under the CHROA due to his failure to exhaust administrative remedies. The statute of limitations to file a complaint with the Connecticut State Commission expired on or about October 9, 2017-- 180 days after his termination. Since Plaintiff never filed a complaint with the Connecticut Commission, and more than 180 days had passed since his alleged act of discrimination, any CHROA claims are now time-barred. This is not true with the NJLAD. Thus, there is a conflict of law here. See McCarrell, 227 N.J. at 584.

The Court must now turn to Sections 6(2), 145, and 146 of the Restatement (Second) of Conflicts of Laws. In reviewing those considerations, the Court finds that Connecticut is the state with the most significant relationship to Plaintiff's dispute.

In Calabotta, the Superior Court of New Jersey, Appellate Division, held that "needs of the interstate . . . systems"-- the first Section 6(2) factor--"are generally best served by applying the law of the state where a job opening will be filled." 460 N.J. Super at 70. The Court reached this conclusion, in part, because it recognized that "the 'needs' of

the system favor . . . uniformity in a hiring context." Id.
Applying that same principle here, the needs of the interstate
systems are best served by applying the law of the state where a
plaintiff works and where relevant employment decisions are
made. As in Calabotta, it would be "unwieldy" for an employer's
termination decisions to be governed by the law of the state of
each employee's choosing, rather than the state where that
employee is based. Here, Plaintiff worked and suffered an
adverse employment action in Connecticut. Thus, the first
Section 6(2) factor favors applying Connecticut law.

Similarly, the Calabotta Court held that the next two
Section 6(2) factors-- the relevant policies of the forum and
the relevant policies of other interested states-- are "fairly
accommodated by applying local law to an employer's conduct in
filling a job application." Id. This Court identifies no reason
to limit that finding to an employer's hiring decisions, to the
exclusion of their firing decisions. Accordingly, these two
factors also favor Connecticut law.

The next Section 6(2) factor, the protection of justified
expectations, supports application of Connecticut law as well.
Absent some specific agreement to the contrary, no reasonable
employee could expect that New Jersey law would govern disputes
with their employer when (1) that employee is based in
Connecticut; (2) their employer is incorporated in Delaware; and

(3) their employer has a principal place of business in Ohio.
Therefore, this factor disfavors the application of New Jersey
law.

When considering the fifth Section 6(2) factor-- the basic
policies underlying the particular field of law-- the Calabotta
Court held that the "'basic policies' underlying
antidiscrimination laws favor applying the NJLAD to the hiring
of workers who will be employed in [New Jersey]." Id. at 71.
This explanation applies equally in the termination of workers.
Thus, the Court finds that the "basic policies underlying
antidiscrimination laws" favors applying the CHROA to the firing
of workers employed in Connecticut. At the very least, this
factor simply does not favor applying the NJLAD to the firing of
workers employed in Connecticut.

For similar reasons, "certainty, predictability, and
uniformity of result, under Section 6(2)(f), and the "ease in
the determination and application of the law to be applied," per
Section 6(2)(e), are best served by applying the law of the
state where a person is employed. Thus, in considering all the
Section 6(2) factors, the Court finds that Connecticut law
should apply to Plaintiff's claims.

Finally, the Section 145 factors also favor the application
of Connecticut law. It is undisputed that Connecticut is the
location of both the purported injury and the place where the

conduct occurred that caused that injury. Furthermore, the § 145 factor concerning the domicile, residence, nationality, place of incorporation and place of business of the parties, certainly does not support applying New Jersey law. Defendant is a Delaware corporation with a principal place of business in Ohio. Plaintiff is a Connecticut resident, who worked at one of Defendant's Connecticut locations. This simply does not support the application of New Jersey law. Moreover, Plaintiff's relationship with Defendant, at the time of his termination, was centered in Connecticut, thus satisfying the Court that § 145 supports the application of the CHROA, and not the NJLAD, to Plaintiff's claims.

Accordingly, the relevant factors in the Restatement (Second) of Conflicts of Laws supports the application of Connecticut law to Plaintiff's dispute. Thus, the NJLAD is inapplicable to Walters' claims that he was retaliated against for his objections to Manning's suspension and termination. Because Plaintiff failed to satisfy the administrative exhaustion requirements of the CHROA, and is now time-barred from doing so, Defendant is entitled to summary judgment.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED.** An appropriate Order accompanies this Opinion.

DATE: April 30, 2021          s/Renée Marie Bumb
                              _____
                              RENÉE MARIE BUMB
                              UNITED STATES DISTRICT JUDGE